**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Imperatrice,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-15-01889-PHX-JZB<br><br>**ORDER** |

  Plaintiff Thomas Imperatrice seeks review of the Social Security Administration Commissioner's decision denying his application for disability benefits under Title II of the Social Security Act. (Doc. 1; Doc. 18.) For the reasons below, the Court will vacate the Commissioner's decision and remand this matter for further administrative proceedings.

**I. Background**

  On July 11, 2012, Plaintiff filed a Title II application for disability insurance benefits. (AR at 14.)[1] In November 2012, Plaintiff's application was denied. (*Id.*) In May 2013, Plaintiff's application was denied upon reconsideration. (*Id.*) On November 14, 2013, a hearing was held before Administrative Law Judge (ALJ) Joan G. Knight. (*Id.*) On March 26, 2014, the ALJ ruled Plaintiff is not entitled to disability benefits because he was "not disabled under sections 216(i) and 223(d) of the Social Security

---

[1] Citations to "AR" are to the administrative record.

Act," through June 30, 2013, the last date insured. (*Id.* at 24.) On July 28, 2015, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration. (*Id.* at 1.)

On September 21, 2015, Plaintiff sought judicial review of the ALJ's decision by filing a Complaint in this Court pursuant to 42 U.S.C. § 405(g). (Doc. 1.) On June 7, 2016, Plaintiff filed an Opening Brief, seeking remand of this case to the Social Security Administration for an award of benefits. (Doc. 18.) On August 4, 2016, Defendant filed a Response Brief in support of the Commissioner's decision. (Doc. 22.) On September 14, 2016, Plaintiff filed a Reply Brief. (Doc. 25.)

## II. Legal Standards

### a. Standard of Review

The Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's disability benefits determinations. The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *see also Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing evidence that both supports and detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720; *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational

interpretation." *Andrews*, 53 F.3d at 1039. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn*, 495 F.3d at 630 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Similarly, the Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

### b. The ALJ's Five-Step Evaluation Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A person is under a disability only:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step evaluation process to determine whether an applicant is disabled under the Social Security Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity" in determining whether the claimant can still do past relevant work or make an

adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v). *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Applying the five-step evaluation process, the ALJ found that Plaintiff was not disabled and is not entitled to benefits. (AR at 15-24.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between his alleged onset date of October 9, 2009 and the last date insured. (*Id.* at 16.) At step two, the ALJ found that Plaintiff had the following severe impairments: "lumbar spine degenerative disc disease (DDD) with stenosis; and obesity." (*Id.*) At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments" in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 17.)

At step four, the ALJ found the following:

> [Plaintiff] had the [RFC] to perform light work as defined in 20 CFR 404.1567(b[)], and as functionally described in Exhibit 4A, except he was limited to sitting and standing for one hour at a time before needing to change positions.

(*Id.* at 18.) The ALJ further found that Plaintiff is "unable to perform any past relevant work" as a truck driver, apartment maintenance, or fitter. (*Id.* at 22.) The ALJ found, however, that "[t]hrough the dated last insured, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." (*Id.* at 23.) Given that finding, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from October 9, 2009, the alleged onset date, through June 30, 2013." (*Id.* at 24.)

**III. Analysis**

Plaintiff argues that the ALJ's decision is defective for the following reasons: (1) the ALJ's rejection of Dr. John P. Deuel's opinions in favor of other medical opinion

evidence is not supported by substantial evidence; (2) the ALJ improperly weighed Plaintiff's subjective statements and discounted his testimony; and (3) the ALJ failed to present substantial evidence to support her RFC finding. (Doc. 18.) The Court addresses these arguments below.

### a. Weighing of Medical Source Evidence

Plaintiff argues that the ALJ erred in rejecting the opinions of Dr. Deuel, Plaintiff's treating physician, in favor of the medical opinions of other doctors. (*Id.* at 19.) Below, the Court addresses the ALJ's treatment of Dr. Deuel's opinions.

### i. Legal Standard

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews*, 53 F.3d at 1040–41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421–22. "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an

examining *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original) (citations omitted).

### ii. The ALJ's treatment of Dr. Deuel's opinions is not supported by substantial evidence.

Dr. Deuel treated Plaintiff throughout 2011, 2012, and 2013. (AR 337–69, 393–415, 449–57, 614–47, 762–83.) On May 4, 2012, Dr. Deuel completed a "Medical Assessment of Ability to Do Work Related Physical Activities" form. (*Id.* at 819–20.) On this form, Dr. Deuel opined that Plaintiff cannot perform work for eight hours a day, 5 days a week on a regular basis, and Plaintiff suffers from sciatica and lumbar disc herniation. (*Id.*) Dr. Deuel also opined that Plaintiff can sit for less than two hours, lift between 15 and 20 pounds, stand and walk for less than two hours, and carry less than 10 pounds. (*Id.* at 819.) Dr. Deuel further opined that Plaintiff can never bend, crawl, climb, stoop, balance, crouch, or kneel, can occasionally use his feet and reach, and can continuously use his hands. (*Id.*) Dr. Deuel also opined that Plaintiff is totally restricted with unprotected heights, being around moving machinery, and driving automotive equipment, and that Plaintiff is only mildly restricted with regard to marked changes in temperature/humidity and being exposed to dust, fumes and gases. (*Id.* at 820.) Finally, Dr. Deuel stated that Plaintiff is on medication that causes drowsiness. (*Id.*)

On May 15, 2013, Dr. Deuel completed another "Medical Assessment of Ability to Do Work Related Physical Activities" form. (*Id.* at 514–15.) On this form, Dr. Deuel opined that Plaintiff "has been totally disabled since 2009," suffers from dizziness due to medication, and suffers from "severe" pain and fatigue. (*Id.*)

Dr. Deuel's opinions were contradicted by the opinions of Dr. Nadine Keer and Dr. Earnest Griffith, state agency non-examining physicians. (AR 20-21.) The ALJ could, therefore, discount Dr. Deuel's opinions for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830–31.

The ALJ assigned "little weight" to Dr. Deuel's opinions because: (1) Dr. Deuel is a family practice physician, not a neurologist; (2) Dr. Deuel restricted Plaintiff to no driving, yet Plaintiff drove to his appointment with Dr. Steingart and to the hearing

without taking pain medications; and (3) Plaintiff's gait was consistently noted as normal. (AR 22.)

The Court finds that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for giving Dr. Deuel's opinions less weight. First, although Dr. Deuel is not a neurologist, the ALJ failed to sufficiently discuss Dr. Deuel's treatment notes, as well as other treatment notes in the record, which provide a longitudinal picture of Plaintiff's impairments and symptoms from 2011 to 2013. *See* 20 C.F.R. §404.1527(c)(2); *Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) (the ALJ cannot ignore and fail to mention the treating doctor and his notes in its decision, especially because the ALJ must give "specific and legitimate reasons" for even rejecting a treating doctor's opinion).

The ALJ gave "more weight" to Dr. Lieberman's May 2011 findings because (1) he was a neurologist, and (2) his findings were supported by Dr. Steingart's benign findings, review of the record, and opinions. (*Id.* at 20.) The Court acknowledges that the ALJ can give more weight to a specialist, like Dr. Lieberman, than a non-specialist, like Dr. Deuel. However, Dr. Lieberman did not opine regarding Plaintiff's functional limitations, his findings do not entirely controvert Dr. Deuel's opinions regarding Plaintiff's functional limitations, and the ALJ omitted discussion of Dr. Lieberman's findings that may be consistent with Dr. Deuel's opinions, including Plaintiff's reduced lumbar range of motion with flexion/extension. (*Id.* at 603–06.) Further, with regard to the ALJ's reference to Dr. Lieberman finding no neurological basis for intermittent numbness, the ALJ does not explain how this finding entirely contradicts Dr. Deuel's opinions related to Plaintiff's back pain. (*Id.* at 20, 736.)

The ALJ also referenced Dr. Steingart's April 30, 2012 IME, record review, and opinions. (*Id.* at 19–20.) As an initial matter, although it appears that Dr. Steingart electronically signed his records review, examination, and portions of his opinions (*id.* at 316), he did not sign his opinions in the RFC form and, therefore, the ALJ should not have relied on those unsigned opinions. *See* C.F.R. 20 § 404.1519o(b) ("We will not use

- 7 -

an unsigned or improperly signed consultative examination report to make [a decision denying benefits]. When we need a properly signed consultative examination report to make these determinations or decisions, we must obtain such a report."); *Lantelme v. Astrue*, No. 2:11-cv-0680 EFB, 2012 U.S. Dist. LEXIS 131730, *10-11 (E.D. Cal. Sept. 14, 2012) (finding the ALJ erred in relying on an unsigned, non-examining report to assess Plaintiff's RFC).[2]

Further, even considering Dr. Steingart's opinions, the ALJ failed to explain how Dr. Steingart's findings and report support Dr. Leiberman's findings, particularly because Dr. Leiberman did not render any opinions regarding Plaintiff's functional limitations. Further, the ALJ did not discuss medical evidence of Plaintiff's symptoms that post-dated Dr. Steingart's exam. *See Stone v. Heckler*, 761 F.2d 530, 532–33 (9th Cir. 1985) (earlier medical evaluations cannot rebut more recent treating doctor's opinion when claimant's condition progressively deteriorated); *Reddick*, 157 F.3d at 727 (it is error to reject a treating doctor's opinion in favor of a one-time examining consultant who lacked review of key medical records). For example, in August 2012, Plaintiff's physical therapy exam revealed decreased lumbar sensation, limited flexion, positive lumbar spine quadrant test, positive SLR test, and antalgic gait. (AR 832–34.)

The ALJ also omitted discussion of notes and findings of Dr. Jonathan S. Hott, a neurosurgeon, which document complaints of numbness in Plaintiff's right lower extremity when in an upright position, worsening back pains, and pain while walking only a few blocks. (*Id.* at 371-72, 374.) Dr. Hott's October 2012 findings indicate lumbar MRI evidence of diffuse lumbar epidural lipomatosis, which caused mild to severe lumbar spinal canal stenosis and degenerative disc bulge, leading Dr. Hott to recommend, as one possible treatment option, surgical intervention in the form of a lumbar laminectomy and thecal sac decompression. (*Id.*)

Similarly, the ALJ omitted discussion of May 2013 findings by Dr. Oner A.

---

[2] The Agency's RFC assessments note that Dr. Steingart's opinions are not signed. (*Id.* at 67, 82.) Defendant offers no response to Plaintiff's argument regarding this issue.

- 8 -

Khera, an orthopedic surgeon. (AR 745–47.) Dr. Khera noted evidence of multilevel lumbar stenosis from epidural lipomatosis and lower lumbar spondylosis. (*Id.*) Dr. Khera further diagnosed low back pain and right lower extremity radiculopathy. (*Id.*) While it is unclear whether these records establish Plaintiff was disabled during the relevant time period, the ALJ failed to fully evaluate and discuss the treatment records and opinion evidence in this case. Therefore, the ALJ's rejection of Dr. Deuel's opinions because he is not a specialist is not supported by substantial evidence.

Second, the ALJ's citation to Plaintiff driving twice is an insufficient basis on which to discount Dr. Deuel's opinions. Dr. Deuel stated that Plaintiff's medications caused drowsiness and dizziness. (*Id.* at 514-15, 820.) Plaintiff testified that he specifically chose not to take his medication when he drove to the hearing because it caused him dizziness. (*Id.* at 22, 48; *see also id.* at 203, 206, 259.) Defendant states that Dr. Deuel's restriction on driving was contradicted by Plaintiff's action of driving twice, once from New River. (*Id.* at 22.) However, Dr. Deuel prescribed medication to Plaintiff on which he should not drive. (*Id.* at 819–20, 514–15.) Therefore, Plaintiff driving on two occasions is not inconsistent with Dr. Deuel's opinions. (*Id.* at 22, 48, 203, 206, 259.)

Finally, the ALJ rejected Dr. Deuel's opinions because records showed Plaintiff's gait to be normal. (AR 22.) Although the ALJ correctly cited to evidence that Plaintiff's gait was normal in instances throughout the record, which may contradict some of Dr. Deuel's opinions, Plaintiff's gait, alone, is an insufficient basis on which to reject all of Dr. Deuel's opinions without further explanation or citation to the record by the ALJ. (*Id.*; AR 323, 330, 332, 348, 351, 354, 747.) *See also Embrey*, 849 F.2d at 422 (the ALJ must interpret evidence and explain why its interpretation is correct, rather than that of a doctor's).

For all of these reasons, the Court finds that the ALJ's treatment of Dr. Deuel's opinions is not supported by substantial evidence.

### b. Plaintiff's Symptom Testimony

Plaintiff also argues the ALJ committed harmful legal error by rejecting Plaintiff's

symptom testimony in the absence of clear and convincing reasons supported by substantial evidence. (Doc. 18 at 8-18.) The Court agrees.

### i. Legal Standard

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison*, 759 F.3d at 1014–15 (citing *Lingenfelter*, 504 F.3d at 1035–36). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen*, 80 F.3d at 1282. Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected to produce his pain." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1160–61 (9th Cir. 2008) ("[R]equiring that the medical impairment 'could reasonably be expected to produce' pain or another symptom . . . requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon").

Second, if a claimant shows that she suffers from an underlying medical impairment that could reasonably be expected to produce her pain or other symptoms, the ALJ must "evaluate the intensity and persistence of [the] symptoms" to determine how the symptoms, including pain, limit the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c)(1). General assertions that the claimant's testimony is not credible are insufficient. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester*, 81 F.3d at 834).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's

reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284; *see also Orn*, 495 F.3d at 637–39. The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms . . . ." *Smolen*, 80 F.3d at 1284 (citation omitted).

At this second step, the ALJ may reject a claimant's testimony regarding the severity of his or her symptoms only if the ALJ "makes a finding of malingering based on affirmative evidence," *Lingenfelter*, 504 F.3d at 1036 (quoting *Robbins*, 466 F.3d at 883), or if the ALJ offers "clear and convincing reasons" for finding the claimant not credible. *Carmickle*, 533 F.3d at 1160 (quoting *Lingenfelter*, 504 F.3d at 1036). "'The clear and convincing standard is the most demanding required in Social Security Cases.'" *Garrison*, 793 F.3d at 1015 (quoting *Moore v. Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

### ii. The ALJ failed to provide clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (AR at 19.) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent and credible . . . ." (*Id.*) The ALJ did not make an affirmative finding of malingering.[3] Therefore, the ALJ was required to provide clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's testimony regarding the severity of her symptoms.

---

[3] Although Defendant's Brief states that the ALJ cited to evidence suggesting Plaintiff malingered during his April 2012 examination with Dr. Steingart, the ALJ does not make an affirmative finding of malingering.

The ALJ found Plaintiff "less than fully credible" because: (1) Plaintiff "is inconsistent in reporting results from treatment"; and (2) Plaintiff was noncompliant with prescribed treatment. (*Id.* at 20-22.)

The Court finds the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's testimony. First, the ALJ noted that Plaintiff's testimony regarding his physical therapy conflicted with the physical therapy reports. (AR at 20.) Plaintiff testified that the physical therapy was not helpful with his pain, but an August 2012 report states that Plaintiff "thinks [the exercises] are helpful" and "noticed a difference after traction." (*Id.* at 40, 832, 826.) Additionally, the ALJ asserted that Plaintiff's testimony regarding lumbar injections conflicted with the medical report. (*Id.* at 20.) For example, Plaintiff testified that the lumbar injections were not helpful, whereas the report from September 2013 states that Plaintiff had "good relief" after two injections. (*Id.* at 814.)

While the ALJ may rely on inconsistent statements made by the Plaintiff in assessing credibility, the specific medical records cited by the ALJ only showed short-term relief and do not reflect the record as a whole over time. Therefore, these records, alone, do not provide a sufficiently clear and convincing basis to affirm the ALJ's credibility finding here. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161-62 (9th Cir. 2014) (some improvement does not mean impairment no longer severely affects a plaintiff's ability to function in a work environment which is why observations must be made in context of the overall diagnostic picture); *Lester*, 81 F.3d at 833 (occasional periods where a plaintiff is symptom-free is not inconsistent with disability).

Second, the ALJ asserted that "the claimant has been noncompliant with prescribed treatment designed to alleviate his alleged ankle pain" and that "this noncompliance seriously compromised the claimant's credibility." (AR at 22.) Although Plaintiff reported complete weight bearing in January 2013, despite instructions to keep weight off of his left foot/ankle, the Court does not find this reason to be sufficient to discount Plaintiff's testimony regarding the impact of his back pain. (*Id.* at 473); *see*

- 12 -

*Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("the ALJ never connected the medical record to Claimant's testimony about her headaches."). Further, Plaintiff was compliant after his second surgery when his first surgery, despite his failure to refrain from weight bearing, was successful. (AR at 473, 486, 498.) The ALJ cited to an isolated example that does not capture the record as a whole. Accordingly, this reason is also an insufficient basis upon which to discredit Plaintiff's testimony.

Although the ALJ provided some basis to discount portions of Plaintiff's testimony, the cited reasons are not sufficiently clear, convincing, and supported by substantial evidence to affirm the ALJ's credibility determination.[4]

### c. The ALJ's Assessed RFC

Finally, Plaintiff contends that the ALJ's assessed RFC is not supported by substantial evidence because the ALJ did not include Dr. Steingart's assessed limitation that Plaintiff must rest for 10 minutes every two to three hours. (Doc. 18 at 25-26.) The ALJ's treatment of Dr. Steingart's opinions is unclear. The ALJ discusses the opinions as being consistent with Dr. Lieberman's assessment, but the ALJ does not explicitly explain the weight given to Dr. Steingart's opinions, and it appears that the ALJ rejected some, but not all, of Dr. Steingart's opinions. (AR 19.) As detailed below, the Court will remand this matter for further proceedings. The ALJ should more clearly evaluate and address Dr. Steingart's findings and opinions on remand.[5]

## V. Remand for further proceedings is appropriate here.

---

[4] In the middle of Plaintiff's argument regarding the ALJ's treatment of Plaintiff's symptom testimony, Plaintiff appears to allege the ALJ erred in failing to find that Plaintiff "suffered impairment of the feet" at step two. (Doc. 18 at 11.) Plaintiff does not brief this argument further, and Defendant does not respond to it. (Doc. 22.) Plaintiff alleged disability due to right ankle weakness. (AR 184.) The ALJ considered Plaintiff's allegations regarding symptoms related to his feet. (*Id.* at 18, 20.) However, the ALJ did not find any separate ankle impairment. (*Id.* at 16-17.) Because, as detailed below, the Court will remand this matter for a de novo hearing, the ALJ will have the opportunity to consider Plaintiff's alleged ankle impairment on remand.

[5] Plaintiff also briefly argues that the ALJ erred in discounting the lay opinions of Plaintiff's wife, and the ALJ's determination at step five conflicts with the Medical-Vocational Rules due to Plaintiff's age, education, and vocational background. (Doc. 18 at 18-19, n.7, 26.) However, given the Court's other findings, it need not reach those issues here.

- 13 -

Having determined that the ALJ erred, the Court must vacate the Commissioner's decision. The remaining issue for the Court is whether to remand this matter for an award of benefits or for further proceedings. Such a determination is within the Court's discretion. *Smolen*, 80 F.3d at 1292.

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quotation omitted); *see also Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1101 (9th Cir. 2014) (noting that a remand for further administrative proceedings is generally useful where the record has not been fully developed, there are outstanding conflicts and ambiguities to be resolved, or the presentation of further evidence may "prove enlightening."). The Court applies the credit-as-true rule to determine that a claimant is disabled and entitled to an award of benefits only if there are no "outstanding issues [in the record] that must be resolved" and "it is clear from the record that the ALJ would be required to find the claimant disabled were [the improperly rejected] evidence credited." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). However, a "claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r, Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

The Court finds the record contains evidentiary conflicts that require further evaluation by the ALJ. For example, although the ALJ failed to give specific and legitimate reasons for giving less weight to Dr. Deuel's opinions, a review of his treating records indicate, on several occasions, Plaintiff was negative for fatigue, dizziness, and sleep disturbance, and had a full range of motion and no edema, even though Dr. Deuel opined that Plaintiff's medication caused dizziness, Plaintiff suffers from fatigue, and Plaintiff has been totally disabled since 2009. (*See, e.g.*, AR 397, 400-01, 403-04, 410, 413-14, 420, 423, 426-27, 515.) Similarly, Dr. Khera found Plaintiff had normal range of motion and stability. (*Id.* at 746-47.) And, as stated above, the ALJ did not sufficiently

- 14 -

discuss pertinent medical records and resolve any conflicts between those records and other evidence.

For these reasons, the Court finds there are outstanding issues that the ALJ must resolve. The Court will therefore remand this matter for a de novo hearing in which the ALJ considers all evidence of record and makes a new determination regarding whether Plaintiff is disabled. *Dominguez v. Colvin*, 808 F.3d 403, 409 (9th Cir. 2015) ("If such outstanding issues do exist, the district court cannot deem the erroneously disregarded testimony to be true; rather, the court must remand for further proceedings."); *see also Brown-Hunter*, 806 F.3d at 496 ("The touchstone for an award of benefits is the existence of a disability, not the agency's legal error.").

Accordingly,

**IT IS ORDERED** that the Commissioners' decision is vacated and this matter is remanded to the Commissioner for further administrative proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 30th day of March, 2017.

Honorable John Z. Boyle
United States Magistrate Judge